### SMITH v. RUSSELL et al.

(Supreme Court, Appellate Division, Third Department. May 3, 1911.)

1. CONTRACTS (§ 350*)—BUILDING CONTRACT—EVIDENCE.

In an action for unpaid contract price for building a schoolhouse, evidence *held* to justify judgment for plaintiff.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 350.*]

2. CONTRACTS (§ 305*)—BUILDING CONTRACTS—WAIVER OF DEFECTS.

Where the evidence showed that plaintiff, a contractor for a building, had received a letter from defendant saying that his money was ready

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for him to pay the balance due for the building "as soon as the building is completed according to contract, the ventilators must be put in," it was a waiver of any other defects than the absence of the ventilators.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398, 1399, 1467–1475; Dec. Dig. § 305.*]

Sewell, J., dissenting.

Appeal from Trial Term, Warren County.

Action by Melvin Smith against Melvin Russell and others. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

T. W. McArthur (E. C. Rogers, of counsel), for appellants.
Howard J. Bush, for respondent.

JOHN M. KELLOGG, J. This case is reported on a former trial in 140 App. Div. 102, 125 N. Y. Supp. 952. A judgment by direction of the trial court dismissing the complaint was reversed upon the ground that there was a question of fact whether or not the plaintiff in good faith substantially performed his contract.

The action is to recover the unpaid contract price for building a schoolhouse. The trustees showed to one Denton a picture of a schoolhouse, stated the size, the quality of the lumber, the windows and doors and their sizes, and the material to be used, and asked him to figure what he would build it for. Nothing was said at the time about a ventilator or woodshed. Denton turned the picture and the information over to the plaintiff, and subsequently stated to the trustees the price of $425. Thereafter the trustees presented to the plaintiff a contract, in the name of Denton and Jacobie, and he swears they requested him to sign their names to it, which he did without reading the paper. No plans or specifications had been completed, although some time after Denton had named the price one of the trustees told him the school authorities would require plans and specifications. At the time the contract was signed, the woodshed and ventilators had not been discussed, and it was not known to the contracting parties that they were to be referred to in the plans. After the contract was signed, for some time nothing was done by the contractors towards building the building. Denton and one of the trustees came to the plaintiff with the plans, and the trustee said that Denton would not build the building. The plaintiff looked over the plans, which were then presented to him for the first time, and said he would not build it, as it had been changed, and handed the plans back. The plaintiff, and others who heard the conversation, swear that it was then stated by the trustee that they would leave the ventilators out. Plaintiff immediately began the work and erected the building without ventilators. The evidence shows that while the building was going on the trustees requested him to take the old lumber which was left, and the metallic roofing from the old schoolhouse which had been burned, and build a woodshed, which he agreed to build for $25. After the house was built, the trus-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tees examined it, said it was a good job, and they liked it. One of the two trustees who had personal relations with plaintiff in the matter does not substantially disagree with his version; the other does not agree with the plaintiff in some respects, but his denials are weak, and his version of the entire matter is unsatisfactory. He admits that when the building was substantially finished he looked it over with the other trustee and said it was very nice, and the evidence shows that thereafter they made a payment to the plaintiff and agreed to pay the balance in about 30 days. After the time expired, plaintiff demanded payment of the balance, and the trustees united in a letter to him saying:

"We have your money ready for you to pay balance due for building schoolhouse as soon as the building is completed according to contract. The ventilators must be put in."

The evidence shows that Denton did not contemplate taking the contract for himself, and was not the agent or representative of the plaintiff, and does not explain why the trustees called upon the plaintiff to sign the names of Denton and Jacobie to the contract.

The plans and specifications when finally prepared were not in accordance with the proposition which Denton made and the trustees accepted, and Denton or plaintiff, no matter what his relations were to Denton, were not required to build the woodshed or put in ventilators unless, after the plans were presented to them after the contract was executed, they approved of them and agreed to build upon them. Although it was stated that plans were to be presented, they had the right to expect that the plans would be according to the understanding which up to that time had existed, and the variations from that understanding justified Denton and the plaintiff in refusing to build under the contract. The specifications and the contract itself contain no reference to a woodshed; it only is drawn upon the plans, and the evidence is clear that it was agreed between the parties that the woodshed should be built other than according to the plans and for a stated price.

[1] I think the question was a pure question of fact, and the preponderance of evidence was decidedly with the plaintiff. In the charge to the jury the trial judge referred to the letter above mentioned, saying:

"So the question is the ventilator system. He could at that time have had his pay in full less cost of the ventilating system, as he can now, provided he had in good faith tried to carry out his contract."

The defendants excepted to the refusal to charge "that there can be no deduction except for the ventilating system," and asked the court to charge that, inasmuch as the plaintiff did not comply with the letter and install the system, he is not entitled to claim a waiver of other defects, if there were any. The court refused, to which the defendant excepted.

[2] I see no prejudicial error here. No fault had been found with the plaintiff's work until this letter was written, and the court was justified in considering the letter as a waiver of other defects. The jury has found that the plaintiff in good faith entered upon and tried to

perform the contract, and substantially did perform it, and have deducted from the contract price an amount which it determines will make the contract good. The judgment is sustained by the evidence, and we find no error to the substantial prejudice of the defendants.

The judgment and order are therefore affirmed, with costs. All concur, except SEWELL, J., dissenting.